IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01663-CBS

**GUILLERMO ORTIZ**,
    Applicant,
v.

**DEBORAH DENHAM**,
    Respondent.

## ORDER OF DISMISSAL

This case is before this Court pursuant to the Order of Reference (ECF No. 32) entered December 2, 2014 and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge (ECF Nos. 28 & 32).

Applicant, Guillermo Ortiz, is a prisoner in the custody of the United States Bureau of Prisons (BOP) currently incarcerated at the Federal Prison Camp in Yankton, South Dakota. On June 13, 2014, Applicant filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging the calculation of his federal prison sentence. He filed an Amended Application on August 1, 2014 (ECF No. 6). First, he argues that the BOP failed to provide credit for the time that he was held in federal custody while on state parole. Next, he argues that the BOP failed to run his federal sentence concurrently with his prior state sentence. Finally, Mr. Ortiz contends that the BOP lacks authority to calculate his sentence because Congress has not authorized the BOP to make sentence calculations. On October 9, 2014, Respondent filed a Response to the Application (ECF No. 29). Applicant filed a Reply on October 27, 2014 (ECF No. 30).

The Court must construe liberally the Application because Mr. Ortiz is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for a *pro se* litigant.

*See Hall*, 935 F.2d at 1110. After reviewing the pertinent portions of the record in this case, including the Application, the Response, and the Reply, the Court concludes that the Application should be denied.

### A. Relevant Facts

The record evidence reflects the following facts. On August 28, 2006, Mr. Ortiz was sentenced in Minnehaha County, South Dakota following conviction for possession of a controlled substance to a seven-year term of imprisonment (three years suspended) in the custody of the State of South Dakota (ECF No. 29-1, p. 13). After serving part of his sentence, he was released from prison in South Dakota on parole supervision (ECF No. 29-1, p. 12). His maximum release date at that time was August 28, 2013 (*Id.*).

On April 12, 2010, federal Drug Enforcement Agency (DEA) officers obtained a search warrant to search Applicant's residence and car. On April 13, 2010, Mr. Ortiz was taken to the DEA office where he was interrogated and tested positive for drugs. After interrogation, South Dakota state officers took Ortiz to state prison pursuant to a parole detainer, which was issued on that date (ECF No. 29-1, p. 11).

On May 4, 2010, Ortiz was indicted in the United States District Court for the Southern District of South Dakota for conspiracy to distribute methamphetamine in violation of 18 U.S.C. §§ 841(a) and 846. On May 7, 2010, the federal Government applied for a writ of habeas corpus *ad prosequendum* to borrow Ortiz from the warden of the South Dakota state prison (ECF No. 29-1, p. 17). The writ was issued May 10, 2010 and was executed on May 19, 2010 for Ortiz's initial court appearance in federal court. The State of South Dakota revoked Applicant's state parole supervision on July 10, 2010 based on his positive drug test on April 13, 2010. As a result, South Dakota recalculated the maximum expiration date of his state sentence as February 28, 2014

(ECF No. 29-1, p. 12).[1]

Between May 19, 2010, and February 23, 2011, Mr. Ortiz appeared before the federal court pursuant to several writs of habeas corpus *ad prosequendum* concerning his federal criminal charges. Following a jury trial, on November 3, 2010, Mr. Ortiz was convicted of the federal charge (ECF No. 29-1, p. 18). On February 23, 2011, in the U.S. District Court for the District of South Dakota, he was sentenced to 188 months imprisonment followed by five years of supervised release. The sentencing court specifically ordered that the federal sentence was to run concurrently with Mr. Ortiz's South Dakota state sentence (ECF No. 30, p. 13). The South Dakota Department of Corrections released Mr. Ortiz via parole on May 23, 2011, when he was taken into federal custody by the BOP.

## B. Federal Sentence Calculation

The Attorney General, through the Bureau of Prisons (BOP), has responsibility for imprisoning federal offenders. *See* 18 U.S.C. § 3621(a). *See also United States v. Wilson*, 503 U.S. 329, 333 (1992). The interpretation of a statute by the agency charged with administering it is entitled to some deference so long as its interpretation is not clearly erroneous or contrary to law or the constitution. *Reno v. Koray*, 515 U.S. 50, 60 (1995). Thus, the standard of review of the BOP's actions in crediting Mr. Ortiz's federal sentence is limited to determining whether the BOP abused its discretion. *See, e.g., Espinoza v. Sabol*, 558 F.3d 83 (1st Cir. 2009) ("Most circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion."). A federal prisoner's sentence calculation is governed by 18 U.S.C. § 3585, "Calculation of a term of imprisonment." Paragraph (a) of the statute governs the date upon

---

[1] *See Lee v. South Dakota Bd. of Pardons and Paroles*, 705 N.W.2d 609 (S.D. 2005) (holding that state Board of Pardons and Paroles had authority to revoke suspended sentence and impose entire original sentence as part of parole revocation process, as well as take good-time and dead-time credits from a parole violator's sentence).

which a prisoner's sentence commences and paragraph (b) governs credit he receives for time he spent in official detention prior to the date his sentence commenced. Thus, in any computation of a federal sentence, two separate decisions must be made: 1) when the federal sentence commences and 2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence.

1. <u>Commencement of a Federal Sentence</u>

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

As noted above, Section 3585(a) states that a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Moreover, a federal sentence "cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980); *DeMartino v. Thompson*, No. 96–6322, 116 F.3d 1489 (10th Cir. July 1, 1997) (unpublished) (citing *Flores*). Thus, BOP has interpreted § 3585(a) such that it will not commence a federal sentence earlier than the date on which it was imposed. *See* BOP Program Statement 5880.28, Sentence Computation Manual (PS 5880.28), Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed.").

A threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody at the time the Federal

sentence was imposed. In this regard, where an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922). The "primary custody" doctrine was developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. The doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. *See Ponzi*, 258 U.S. at 260; *Rawls v. United States*, 166 F.2d 532, 533 (10th Cir. 1948). This rule of comity does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through with him or until the first sovereign agrees to temporarily or permanently relinquish custody. *See Rawls*, 166 F.2d at 533; *see also Hayward v. Looney*, 246 F.2d 56, 57 (10th Cir. 1957) (noting that the first sovereign with custody determines whether jurisdiction and custody shall be retained or surrendered).

"The law of comity is such that ... two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody." *Hernandez v. United States Attorney Gen.*, 689 F.2d 915, 919 (10th Cir. 1982). Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence. *See Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir. 2002).

Under these principals and pursuant to 18 U.S.C. § 3585(a), the BOP will commence the federal sentence upon imposition If the defendant was in primary Federal custody.  If, however, the defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the BOP must determine whether the Federal sentencing court expressly indicated its intent as to whether the federal sentence run concurrently with, or consecutive to, the non-Federal sentence.  18 U.S.C. § 3584(a).  If the Federal court expressly indicated an intention to have its sentence run concurrently with the non-Federal sentence, BOP will designate the State correctional facility as the place for the defendant to serve his Federal sentence.  In such cases, the Federal sentence will be deemed to commence upon imposition.  See 18 U.S.C. §§ 3585(a), 3621(b).  However, if the Federal sentencing court was silent as to whether it intended its sentence to run concurrently, the court's silence will be construed as an intent to impose a consecutive sentence.  18 U.S.C. § 3584(a).  In such cases, the Federal sentence will commence only when primary non-Federal custody over the defendant is relinquished.  18 U.S.C. § 3585(a).

In this case, the federal District Court ordered that Applicant's federal sentence should run concurrently with his state sentence.  Thus, the BOP granted Applicant a *nunc pro tunc* designation under 18 U.S.C. § 3621(b) and calculated his federal sentence as having commenced pursuant to § 3585(a) on the date it was imposed, February 23, 2011 (ECF No. 29-1, p. 9), while Ortiz still was in the custody of South Dakota.  That date is the earliest possible date that the BOP could have computed Applicant's federal sentence as having commenced.  Thus, Mr. Ortiz began serving his federal 188 month sentence on February 23, 2011, the date it was imposed while he was in the custody of South Dakota.  Applicant served the concurrent phase of his state and federal sentences from February 23, 2011, through February 28, 2014, the date his South

Dakota sentence expired. Thus, Mr. Ortiz is receiving the maximum amount of sentencing credit available to him under § 3585(a). As such, I find that the BOP's determination that Applicant's federal sentence commenced on February 23, 2011 is consistent with § 3585(a) and achieves the intent of the federal sentencing court in imposing a sentence to run concurrently with Applicant's state sentence.

2. <u>Prior Custody Credit</u>

The second calculation for determining Applicant's projected federal release date is whether he is entitled to any prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides as follows.

> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. *Wilson*, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. *Cf. Cathcart v. United States Bureau of Prisons*, Civil No.99–6424, 211 F.3d 1277 (10th Cir. May 4, 2000) (unpublished) ( Section 3585(b) prohibits petitioner from receiving credit for time served in federal custody where that time had been credited against his state sentence); *Azure v. Gallegos*, 97 F. App'x 240, 244 (10th Cir. 2004)

(unpublished) (affirming district court's finding that § 3585(b) "prohibits credit for pre-sentencing confinement if that time was applied to a previously-imposed sentence"); *O'Bryan v. Wiley*, 261 F. App'x 117 (10th Cir. 2008) (unpublished) (affirming district court's finding that prisoner was not entitled to prior custody credit for time already credited against previous sentences).

Here, the BOP concluded that Mr. Ortiz received credit on his state sentence for all of the time he spent in state custody prior to the imposition of his federal sentence. Thus, under § 3585(b), it could not credit Applicant with any pre-sentence credit on his federal sentence for this time.

Applicant argues that he was not in state custody from April 13, 2010 onward because there is no evidence that South Dakota revoked his parole. He is mistaken. First, he remained in South Dakota "custody" by virtue of the fact that his sentence had not expired, *i.e.*, he still was serving his South Dakota sentence albeit while he was "free" on parole supervision. Second, and more importantly, there is no evidence South Dakota ever relinquished its custody over him. In this regard, on May 10, 2010, federal authorities secured a Writ of Habeas Corpus *Ad Prosequendum* pursuant to 28 U.S.C. § 2241(c)(5) specifically addressed to the warden of the South Dakota State Penitentiary to secure Mr. Ortiz's presence for his preliminary hearing in federal court on May, 19th 2010 (ECF No. 29-1, 14).

Title 28 U.S.C. § 2241(c)(5) authorizes a United States District Court to issue a writ of habeas corpus *ad prosequendum* to produce a defendant for trial. *Carbo v. United States*, 364 U.S. 611 (1961). The function of the writ of habeas corpus *ad prosequendum* is to temporarily remove a prisoner from the sovereign with primary custody to another sovereign for prosecution. *See Lawrence v. Willingham*, 373 F.2d 731 (10th Cir. 1967); *Lunsford v. Hudspeth*, 126 F.2d 653 (10th Cir. 1942). It is well settled that a prisoner detained pursuant to a writ of habeas corpus *ad*

*prosequendum* remains in the primary custody of the sending sovereign unless and until that sovereign relinquishes jurisdiction over the person.   See *Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir. 2002) ("[t]he sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant")*.*   In other words, the sending sovereign retains primary custody and the receiving sovereign (in this case, the federal government) is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him.   *Hernandez v. United States Attorney General*, 689 F.2d 915, 919–20 (10th Cir. 1982) (holding that where petitioner had simply been "borrowed" from state of Colorado pursuant to writ of habeas corpus *ad prosequendum*, he was not in federal custody).   Because the receiving sovereign merely obtains limited jurisdiction over the "borrowed" prisoner, the prisoner remains under the primary jurisdiction of the sending sovereign and is considered to be in the custody of the sending sovereign not the receiving sovereign.   Thus, when a defendant is borrowed from the primary custodian via a writ of habeas corpus *ad prosequendum*, principles of comity require the return of the defendant to the primary custodian when the prosecution has been completed.

When Mr. Ortiz was produced in federal court the first time on May 19, 2010, the court specifically noted.

> It appears that Defendant is currently in the custody of the State of South Dakota. Defendant appeared to answer these federal charges pursuant to a writ of habeas corpus *ad prosequendum*.  In accordance with the Bail Reform Act, 18 U.S.C. §3142(f), a detention hearing has been held.  I conclude, however, that the detention issue is, for all practical purposes, moot because the defendant is currently in the custody of the State of South Dakota.  The Marshal shall return the Defendant to the custody of the State of South Dakota pending further proceedings in this matter.  If Defendant is released or furloughed by the state before these federal proceedings are concluded, Defendant shall immediately be returned to this Court for further proceedings to determine whether he should be detained or released pending final resolution of the federal charges.

ECF No. 29-1, p. 15.

Federal authorities again procured a writ of habeas corpus *ad prosequendum* on October 26, 2010 in order for Applicant to proceed to trial on his federal charge and again on January 7, 2011 in order for Applicant to appear in federal court for sentencing. If Applicant had been in federal custody during this time, federal authorities would not have been required to have procured these writs. Because he was returned to South Dakota custody throughout the period of his federal criminal proceeding, it was necessary to procure his presence in federal court via a writ of habeas corpus *ad prosequendum*.

Applicant further argues that BOP must grant him prior custody credit in order to effectuate the sentencing judge's order that his sentences were to run concurrently. However, a federal court only has the power to impose a federal sentence to run concurrently with the "undischarged" portion of the earlier-imposed state sentence. See 18 U.S.C. § 3584 (providing that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively) (emphasis added). "Concurrent" under § 3584(a) means that the new sentence starts to run with the remaining portion of the pre-existing undischarged sentence. See *DeMartino*, 116 F.3d 1489 ("Logically, [a federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served."); *Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C. Cir. 1983) ("[A] federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner. Rather, the second sentence runs together with the remainder of the one then being served."). Thus, a concurrent sentence commences on the date of its imposition and not on the date of commencement of the prior undischarged sentence or some earlier date. The fact that Applicant's federal sentence was ordered to run concurrently with his state sentence

does not change the prohibition against double credit under § 3585(b).

South Dakota did not relinquish jurisdiction over Applicant prior to his federal sentencing date. Applicant was brought before the federal court several times pursuant to writs of habeas corpus *ad prosequendum* but primary jurisdiction over him remained vested in the state; no triggering event occurred to shift primary jurisdiction to the federal government. Primary custodial jurisdiction remains vested in the sovereign that first arrests the defendant until that sovereign relinquishes its priority. Primary jurisdiction can be relinquished by operation of law or by the mutual agreement of the two custodial jurisdictions. *United States v. McCrary*, 220 F.3d 868 (8th Cir. 2000). Thus, the sovereign with primary jurisdiction may elect under the doctrine of comity to relinquish it to another sovereign, if the sovereign accepts. However, any dispute over whether an inmate should be in the primary custody of either the state or federal government is a matter to be agreed upon between the two sovereigns; it is not subject to attack by the prisoner. *Harvey v. Gallegos*, 290 F. App'x 142 (10th Cir. 2008); *Bowman v. Wilson*, 672 F.2d 1145, 1150 (3d Cir.1982); *McCrary*, 220 F.3d at 870. Nor is there any basis for attack in the matter before this Court.

Applicant was in the primary custody of the state when his federal sentence was imposed. Moreover, he received credit on his state sentence for all time he spent in custody after April 13, 2010. Thus, he is not entitled to any credit toward his federal sentence for time spent in custody prior to the date of the imposition of his federal sentence. Applicant was not serving his state and federal sentences concurrently until February 23, 2011. *See Azure*, 97 F. App'x at 244 (rejecting petitioner's argument that his federal and state sentences were not fully concurrent unless his federal sentence was deemed commenced from the date of the federal charge; instead, the concurrent sentence imposed by federal district court caused petitioner's state and federal

sentences to run concurrently from the date of federal sentencing).[2]   Based on the above findings, Applicant's claim lacks merit and the Application will be denied.

Accordingly, **IT IS ORDERED** that:

1. The **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** (ECF No. 6) is **DENIED**;

2. This case is **DISMISSED**;

3. Leave to proceed *in forma pauperis* on appeal is **DENIED**.  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado this 2nd day of June, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge

---

[2]   Moreover, Applicant's argument that BOP does not have authority over his federal sentence simply is frivolous.  *See Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469 n. 3 (10th Cir. 1992) (holding that under 18 U.S.C. § 3621(b), BOP exercises the same discretion previously vested in the Attorney General under repealed provisions of 18 U.S.C. § 4082).